By the Court.—Curtis, Ch. J.
—The agreement between the parties to the policy required that in case of the death of the person insured, notice in writing should forthwith be given to the insurer, and further that full proofs be presented in twelve months from the time the loss occurs, .or the claim would be forfeited. Payment by the company was conditioned upon compliance with these requirements of the policy.
If persons choose to enter into contracts of this nature, and subject to these conditions, it is no reason, because hardships and loss result, that courts should disregard well-established legal principles in interpreting and enforcing them. Where parties have distinctly agreed, their contracts must be sustained and performed (Foot v. Ætna Life Ins. Co., 61 N. Y. 571; Ritzler v. World Ins. Co., 42 N. Y. Super. Ct. 409).
The position of the defendants,—that the non-compliance of the plaintiff with these conditions of the policy, exonerates them from liability to pay the loss,— *360 is tenable, unless by some act on their part, they have made these conditions inoperative.
The testimony shows that the plaintiff had two other policies on the life of the deceased, one of $5,000 and one of $2,500, that he dealt entirely with the general agent of the defendants, and who as such indorsed the checks drawn by plaintiff for premiums to the defendant’s order. The plaintiff, in answer to a question, asking him if, at any time prior to 1874, he had any conversation with the officers of the defendants, or their representatives, in relation to notices or proofs of death, testified as follows :
“ I had, with the general agent, C. L. North, in 1872, two or three days before I went to Europe ; as there were three policies which came due within the next six weeks subsequent to the time of my going away I spoke to him on the subject; he said in regard to paying them in advance, that there was no trouble about that. I raised the question in regard to Mr. Mitchell dying prior to the time the premiums became due ; he said that the company had agents who would know of the death before I could, and that in any case, if I advanced the money, it would be returned, and that there was no trouble at all in regard to that whole thing; I went to Europe on July 3, 1872; I returned in the latter part of October, 1872.”
After the decease of the insured, in 1873, the defendants continued to call upon the plaintiff for two years, by notices, to pay the annual premiums upon the policy, which he did.
Here was a statement made to the plaintiff, when about to leave for Europe, by the general agent of the company, that by its terms and language would naturally throw the plaintiff off his guard in watching the life of the deceased. The statement that the company had agents who would know of the death of the insured before the plaintiff would, “ and that there *361 was no trouble at all in regard to the whole thing,” was equivalent to saying, “we shall know about his death before you, and in ample time, and there is no occasion to give yourself any trouble about it.”
It was reasonable, and perfectly consistent with these representations, that the plaintiff should feel that he need not deal with the company thereafter, at arm’s length on this point, and that he should respond to their calls for the annual premiums. It is not disputed by the defendants, that this representation was made to the plaintiff, and that thereafter he should continue his payments on all these policies without further inquiry in response to their call, is indicative of his reliance upon it. The evidence does not show that the company had such agents as the general agent represented to the plaintiff they had.
The question arises as to which party under these circumstances shall bear the loss. It would be manifestly unjust that the defendants should mislead a policy owner by their representations, into the omission of an act by which the policy became forfeited, and that they could profit by their own breach of faith. It was said upon the argument, that this case was “ sui generis, and that never before was there such an experience on the plaintiff’s or defendant’s part.” The concurrence of facts presented may be new, but the principle of law to be invoked and applied is familiar and elementary.
There also appears to be an experience on the defendant’s part in Leslie v. Knickerbocker Life Ins. Co. (63 N. Y. 27), quite analogous to the present. In that case the plaintiff’s agent, not knowing when the premium fell due, applied before default at defendants office, to a person standing at the cashier’s desk, to ascertain it; this person did not give the information, but promised to send notice. This promise was not performed, and the company claimed, when he again *362 called, which was after the premium fell due, that the policy had in the interval elapsed. The defense of the company was not sustained, the court saying, per Forger, J., that even if there was no primary hostile purpose in the action of one, who may in a certain event, become entitled to a forfeiture or other right arising from the non-performance of a condition, if by his act he has induced another to omit strict performance, he may not take the benefit or exact the forfeiture.
This principle is conclusive in governing the present case, unless there was a lack of authority on the part of the general agent to make the representations that he did to the plaintiff, in respect to notice of the death of the insured. Although the second condition of the policy declares void certain acts unless signed by the president and secretary, it does not extend to representations made by its general agent. No claim was made on the argument that the general agent had acted beyond the scope of his authority. There is nothing in the case to show that the policy owner had reason to suppose that the general agent of the company, with whom he had all his transactions, and who indorsed the checks drawn by him to the order of the company, had powers other or different from those he assumed to have and exercised.
Judgment should be ordered for the plaintiff upon the verdict, with costs.
Freedman, J., concurred.